# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| VALIDUS REINSURANCE, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 13-0109 (ABJ) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Plaintiff Validus Reinsurance, Ltd. filed this case against defendant United States of America, alleging that the Internal Revenue Service ("the Service") improperly assessed and collected excise taxes on plaintiff's foreign retrocession transactions pursuant to 26 U.S.C. § 4371 (2012). Plaintiff seeks to recover the full amount of the excise tax and related interest that it paid in connection with the challenged 2006 tax assessment. Compl. at 5 [Dkt. # 1].

The material facts in this case are undisputed, and the parties filed two joint statements of undisputed material facts. Joint Statement of Undisputed Material Facts ("1st Joint SOF") [Dkt. # 15-1]; Addendum to Joint Statement of Undisputed Material Facts ("2d Joint SOF") [Dkt. # 17-1]. Both parties also filed cross-motions for summary judgment. Pl.'s Mot. for Summ. J. [Dkt. # 15]; Def.'s Cross-Mot. for Summ. J. [Dkt. # 17]. Because the Court finds that the excise tax assessed was not authorized by the statute, it will grant plaintiff's motion for summary judgment, and it will therefore deny defendant's cross-motion for summary judgment.

## BACKGROUND

### I.        Statutory Background

This case involves the taxation of a particular type of insurance transaction.  In a direct insurance transaction, a person or entity contracts with an insurance company to receive protection against casualty loss or to obtain life insurance coverage.  A reinsurance transaction occurs when the insurance company that directly insured the person or entity buys insurance from another insurance company ("the reinsurer") to cover the risks associated with the direct insurance policy.  In other words, reinsurance is insurance for insurance companies, and it covers an insurer in the event it is required to pay out funds under one or more of the direct insurance policies that it has issued.[1]

A third type of insurance transaction – and the one that serves as the basis for the challenged excise tax in this case – is called a retrocession.  A retrocession is a form of reinsurance one more step removed from the original direct insurance policy:  it occurs when a reinsurer buys insurance from yet another insurance company ("a retrocessionaire") to protect the reinsurer in the event it is required to pay claims under one or more of the reinsurance policies that it has issued to the direct insurers.

Section 4371 of title 26 of the U.S. Code aims to tax insurance transactions involving policies issued by foreign insurers or reinsurers.  26 U.S.C. § 4371.  Specifically, section 4371 provides:

> There is hereby imposed, on each policy of insurance . . . or policy of reinsurance issued by any foreign insurer or reinsurer, a tax at the following rates:

---

[1]        Reinsurance "serve[s] at least two purposes, protecting the primary insurer from catastrophic loss, and allowing the primary insurer to sell more insurance than its own financial capacity might otherwise permit."  *Hartford Fire Ins. Co v. California*, 509 U.S. 764, 773 (1993).

(1) **Casualty insurance and indemnity bonds.**—4 cents on each dollar, or fractional part thereof, of the premium paid on the policy of casualty insurance or the indemnity bond, if issued to or for, or in the name of, an insured as defined in section 4372(d);

(2) **Life insurance, sickness, and accident policies, and annuity contracts.**—1 cent on each dollar, or fractional part thereof, of the premium paid on the policy of life, sickness, or accident insurance, or annuity contract; and

(3) **Reinsurance**.—1 cent on each dollar, or fractional part thereof, of the premium paid on the policy of reinsurance covering any of the contracts taxable under paragraph (1) or (2).

*Id.* § 4371(1)–(3).

The statute defines the "policy of reinsurance" upon which the tax will be imposed as "any policy or other instrument by whatever name called whereby a contract of reinsurance is made, continued, or renewed against, or with respect to, any of the hazards, risks, losses, or liabilities covered by contracts taxable under paragraph (1) or (2) of section 4371."  *Id.* § 4372(f).  It does not mention retrocessions.

Generally, the party paying the premium – instead of the foreign insurer or reinsurer receiving the premium payment – has the duty to remit the tax.  *See* Treas. Reg. § 46.4374-1(c) (2002).  The tax owed is reportable by tax return.  26 U.S.C. § 4374.

## II.    Factual Background

The following facts are taken from the parties' two joint statements of undisputed, material facts.  Plaintiff Validus Reinsurance, Inc. is a Bermuda corporation that "is engaged in the business of reinsurance."   1st Joint SOF ¶¶ 1, 4.  It sells reinsurance policies to other insurance companies, offering "protection against, or compensation or indemnity for, the liability of [that insurance company] to pay valid claims to its policyholders."  *Id.* ¶ 7.

In an effort to protect itself, plaintiff "sometimes buys reinsurance for a portion of its potential liabilities under the reinsurance contracts it sells." *Id.* ¶ 8.  These transactions are called "retrocessions," and they protect plaintiff 'against the risk that [it] will have to make payments to [other insurance companies] under its reinsurance agreements with those companies." *Id.*   In 2006, plaintiff paid premiums on nine retrocession policies, and all the retrocessionaires from whom plaintiff obtained insurance are considered "foreign reinsurers" within the meaning of 26 U.S.C. § 4371.  *Id.* ¶¶ 9–10.

In February 2012, the Service first requested that plaintiff "consent to the assessment of [an] Excise Tax . . . (totaling $326,340 for 2006)." *Id.* ¶ 16.  Although the taxes were considered over six years delinquent, the Service noted that it would not impose penalties because plaintiff had a reasonable cause for its position of non-taxability.  *Id.*   Plaintiff paid the assessment in full, plus the $109,040 later assessed in interest, and it then filed a claim for refund with the Service. *Id.* ¶¶ 17–19.  After six months and no action by the Service, plaintiff filed the instant cause of action, seeking a refund of the excise tax and interest that it paid.  *Id.* ¶ 21; Compl. at 5.

Recognizing that this case presents a pure question of law, the parties have filed cross-motions for summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

In cases where there are cross-motions for summary judgment, "neither party waives the right to a full trial on the merits by filing its own motion; each side concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989), quoting *McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982).

## ANALYSIS

This case presents the straightforward question of whether 26 U.S.C. § 4371(3) imposes an excise tax on retrocession insurance transactions.  Plaintiff argues, among other things, that the plain language of section 4371(3) does not apply beyond the first level of reinsurance transactions.  Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") at 9–12 [Dkt. # 15-2].  Defendant maintains that Congress intended to impose a tax on any and all successive levels

of insurance or reinsurance obtained from a foreign issuer.  Def.'s Mem. in Supp. of Def.'s Mot.

for Summ. J. ("Def.'s Mem.") at 16–19 [Dkt. # 17-2].  Both parties also raise arguments relating

to whether Congress intended to impose the excise tax extraterritorially and to Executive Branch

enforcement policies regarding the excise tax, as well as whether imposing the tax on plaintiff

comports with international law and the Due Process Clause of the Fifth Amendment.  *See*

*generally* Pl.'s Mem.; Def.'s Mem.  Because the Court finds that the plain language of section

4371(3) does not impose an excise tax on retrocession insurance transactions, and plaintiff is

entitled to summary judgment, it need not address the parties' additional arguments.[2]

Section 4371 is the active taxing provision that imposes an excise tax on a variety of

insurance transactions that involve a foreign insurer or reinsurer.  It is undisputed that the Service

invoked section 4371(3) to impose an excise tax on retrocession transactions in which plaintiff

purchased insurance to cover policies of reinsurance that it issued.  Defendant justifies the

imposition of the tax under section 4371(3) by taking the position that all policies of reinsurance

– regardless of contractual risk they cover – may be taxed under this subsection.  But this

position cannot be squared with the plain language of the statute.

"When faced with a question of statutory interpretation, a court first must look to the

language of the act itself."  *Higgins v. Marshall*, 584 F.2d 1035, 1037 (D.C. Cir. 1978), citing

*Caminetti v. United States*, 242 U.S. 470, 485 (1917).  Absent a persuasive reason to the

contrary, courts give the plain language of an enactment their ordinary meaning.  *Id.*  And the

---

2 Defendant devotes part of its cross-motion for summary judgment to the argument that
plaintiff bears the burden to establish the incorrectness of the tax assessed, and that plaintiff has
not met that burden in this case because it did not put forth evidence regarding its retrocession
contracts.  Def.'s Mem. at 5–7, 26.  The Court is not persuaded by this argument.  As addressed
more fully below, section 4371(3) does not impose a tax on retrocession insurance transactions
and defendant has admitted in the joint statement of facts that the challenged excise tax relates
solely to retrocession transactions.  *See* 1st Joint SOF ¶¶ 9, 15.

plain language of section 4371(3) forecloses defendant's argument that the Service properly assessed an excise tax on plaintiff's retrocession transactions.

Section 4371(3) contains a clear internal limitation on its application to reinsurance policies:  the excise tax provision applies to "premium[s] paid on the policy of reinsurance *covering any of the contracts taxable under paragraph (1) or (2)*."  26 U.S.C. § 4371(3) (emphasis added).  The contracts taxable under paragraphs (1) are contracts for "[c]asualty insurance and indemnity bonds," *id.* § 4371(1), and the contracts taxable under paragraph (2) are contracts for "[l]ife insurance, sickness, and accident policies, and annuity contracts."  *Id.* § 4371(2).  A policy of reinsurance guarding against risk assumed by contracting to provide reinsurance is therefore outside the scope of section 4371(3) and not subject to the tax imposed on reinsurance contracts in that provision.

The challenged excise taxes in this case were imposed upon premiums paid on policies of reinsurance that plaintiff purchased to cover the risks associated with its own reinsurance contracts.  *See* 1st Joint SOF ¶¶ 8, 14–16.  These second-level reinsurance policies do not cover casualty insurance, indemnity bonds, life insurance, sickness or accident insurance, or annuity contracts.  Consequently, the transactions giving rise to the challenged tax assessment do not fall within the plain language of section 4371:  they are not "premium[s] paid on the policy of reinsurance covering any of the contracts taxable under paragraph (1) or (2)" because the premiums paid only provide coverage for a contract that was taxable under paragraph (3).  26 U.S.C. § 4371(3).

Neither the introductory language in section 4371 nor the definition of "policy of reinsurance" contained in section 4372(f) warrant a different conclusion.  It is true that section 4371 states that an excise tax is to be imposed "on *each* policy of insurance . . . or policy of

reinsurance," *id.* § 4371, but those words are specifically defined in the statute in a manner that excludes the policies involved here.  Section 4372(f) defines the term "policy of reinsurance" to be limited to contracts of reinsurance that are "made, continued, or renewed against, or with respect to, any of the hazards, risks, losses, or liabilities covered by contracts taxable under paragraph (1) or (2) of section 4371." *Id.* § 4372(f).   Furthermore, the statute only sets forth a rate for premiums paid on policies that cover "contracts taxable under paragraph (1) or (2)."[3] *Id.* § 4371(3).   Thus, both the active taxing provision and the definition of "policy of reinsurance" explicitly restrict section 4371(3)'s application to transactions where the reinsurance purchased covers contractually assumed risks described in paragraph (1) or (2) of section 4371, and not those described in paragraph (3).[4]  If the Court is bound to follow the plain language of the statute when Congress expresses its intention once, surely it is bound to take heed when Congress does it twice.

Defendant argues that Congress would have created an exemption for retrocessions if it did not intend to tax them under section 4371(3) and that imposition of an excise tax on plaintiff's foreign retrocession transaction is necessary to fulfill the purpose of section 4371,

---

3       This raises the question:  if the Service is correct that retrocessions are taxable under this provision, what is the rate supposed to be?  The lack of a provision setting rates for retrocessions reinforces the Court's conclusion.

4       In 2008, the Service issued Revenue Ruling 2008-15, which addressed two issues, the most pertinent of which dealt with whether section 4371(3) applies where both parties to the transaction are foreign entities.  Rev. Rul. 2008-15, 2008-12 I.R.B. 633.  The ruling did not squarely address the issue presented in this case, but it assumed that retrocessions are taxable under section 4371.  This assumption is not entitled to here.  In this Circuit, courts "accord [revenue] rulings with *Skidmore* deference-that is, they are 'entitled to respect' to the extent they 'have the power to persuade.'"  *Del Commercial Props., Inc. v. Comm'r of Internal Revenue Serv.*, 251 F.3d 210, 214 (D.C. Cir. 2001).  But courts will not defer when a ruling contrasts with clear statutory language.  *Nat'l R.R. Passenger Corp. v. United States*, 338 F. Supp. 2d 22, 28 n.6 (D.D.C. 2004) ("The Court is unpersuaded by the reasoning in Revenue Ruling 79-404, which cannot overrule a clear statutory requirement.").

which was to level the playing field between foreign (re)insurers who were not subject to tax and domestic (re)insurers who must pay income tax.   As to the first argument, the Court cannot divine any intention from the mere absence of an exemption, particularly when Congress spoke so clearly about what it did intend to cover.   And while it may be correct that taxing retrocessions would be consistent with the purpose underlying the legislation, it is not up to this Court to rewrite the statute to accomplish that goal.   *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) ("If [a statute is unambiguous], we must apply the statute according to its terms.").   If Congress is dissatisfied with the gap in this provision, and it wishes to tax plaintiff's foreign retrocession transactions, Congress itself must make the legislative change.

Once this Court concludes that 26 U.S.C. § 4371(3) does not apply to retrocessions, it immediately follows that plaintiff is entitled to summary judgment.   The facts in this case are undisputed, and they demonstrate that the challenged transactions all relate to retrocession agreements between plaintiff and nine other entities.   Thus, the Court concludes that the Service erred in assessing an excise tax on plaintiff's 2006 retrocession transactions, and plaintiff is entitled to a tax refund in this case.[5]

---

5       Defendant relies too heavily on *United States v. Northumberland Ins. Co.*, 521 F. Supp. 70 (D.N.J. 1981).   Putting aside that the case is not binding on this Court, the *Northumberland* court was not presented with, nor did the parties appear to address, the question of whether retrocessions are taxable under section 4371(3).   *See id.*   Instead, the case dealt with whether an entity must fit the definition of an "insured" under section 4372 in order to be subject to an excise tax under section 4371(3), and that issue has no bearing on this case.

**CONCLUSION**

For the reasons stated above, the Court finds that 26 U.S.C. § 4371 does not impose an excise tax on retrocession insurance transactions.[6]  It will therefore grant plaintiff's motion for summary judgment and deny defendant's cross-motion for summary judgment.  Plaintiff is entitled to a refund of the excise tax and related interest that it previously paid for the four calendar quarters during 2006.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge

DATE:  February 5, 2014

---

6    This decision is in no way predicated on plaintiff's argument that Congress did not intend and does not have the power to tax purely foreign-to-foreign insurance transactions.